Sam Cannon #13797
The Law Office of Sam Cannon
320 Maple Street #115
Fort Collins, CO 80521
970/471-7170 | phone
970/360-2684 | fax
scc@cannonlaw.com
**Attorney for Plaintiff Kristen Kopp**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | | |
|---|---|---|
| **Kristen Kopp** | ) | **Case No.** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Theron Nelson, Darlene Nelson** | ) | **COMPLAINT AND** |
| **Greener Montana Property Management,** | ) | **JURY DEMAND** |
| **LLC, dba Greener Montana Properties** | ) | |
| **McLaren HVAC, Inc.** | ) | |
| | ) | |
| **Defendants** | ) | |

Plaintiff Kristen Kopp, through counsel, states as follows for her Complaint against

the above-named Defendants.

### PARTIES

1. Plaintiff Kristen Kopp ("Tenant") is an individual who resides in Salt Lake

   City, Utah.

2. Defendants Theron and Darlene Nelson ("Owners") are individuals who reside in Hamilton, Montana.

3. Defendant Greener Montana Property Management, LLC dba Greener Montana Properties ("Property Manager") is a Montana limited liability company with a principal address in Hamilton, Montana.

4. Defendant McLaren HVAC, Inc., ("HVAC Contractor") is a Montana For Profit Corporation with a principal address in Victor, MT.

5. Starting on July 17, 2018 and lasting until the end of November 2018, Tenant leased a property at 3653 Silverthorn Dr., Unit A, Stevensville, MT, 59870 (the "Premises") from Owners through Property Manager. Unknown to Tenant, the boiler at the Premises had been improperly installed and maintained by HVAC Contractor.

## JURISDICTION & VENUE

6. Plaintiff Kopp lives in Salt Lake City, Utah and has no immediate intention of residing in any other state. Accordingly, she is a citizen of Utah for purposes of diversity jurisdiction.

7. Based on a review of Montana's cadastral property records, Owners live in Hamilton Montana, so they are citizens of Montana for purposes of diversity jurisdiction.

8. Based on a review of the Montana Secretary of State's business information database, Property Manager is a Montana company with its main base of operations in Hamilton, Montana, so it is a citizen of Montana for purposes of diversity jurisdiction.

9. Based on a review of the Montana Secretary of State's business information database, HVAC Contractor is a Montana company with its main base of operations in Victor, Montana, so it is a citizen of Montana for purposes of diversity jurisdiction.

10. There is complete diversity of citizenship between the parties.

11. Accordingly, jurisdiction in this case is proper under 28 U.S.C. § 1332

12. This case arises out of conduct and injuries that occurred in Ravalli County, Montana. Accordingly, venue is proper in the Missoula Division of the United State District Court for the District of Montana.

## GENERAL ALLEGATIONS

13. Carbon Monoxide ("CO") is a colorless, odorless, poisonous gas.

14. Carbon Dioxide ("$CO_2$") is also a colorless and odorless gas. But it is mostly harmless.

15. Both CO and $CO_2$ can be byproducts of combustion in a boiler. $CO_2$ is generated when there is enough air present in the heating chamber to fully combust the fuel. CO is generated when there is too much fuel for the amount of air present in the heating chamber of the boiler leading to incomplete combustion.

16. During the time Tenant lived at the Premises, she was exposed to poisonous levels of CO due to an improperly installed and maintained boiler.

**THE RELATIONSHIPS BETWEEN THE PARTIES**

17. At all times relevant to this case, Owners were the title holders to the Premises. Accordingly, Owners were landlords of the Premises within the meaning of MCA § 70-24-103(7)(a).

18. At all times relevant to this case, Tenant lived at the Premises pursuant to a written lease agreement. Accordingly, Tenant was a tenant of the Premises within the meaning of MCA § 70-24-103(16).

19. At all times relevant to this case, Owners appointed Property Manager as their agent and representative with respect to management of the Premises.

20. At all times relevant to this case, HVAC Contractor was hired by Property Manager on behalf of Owners to perform installation and maintenance work on the heating system at the Premises, including the boiler for the unit Tenant lived in.

21. At all times relevant to this case, HVAC Contractor held itself out to the public as having specialized knowledge and skill in the field of installing and maintaining heating systems, including boilers like the one installed at the premises.

**DEFENDANTS' DUTIES TO PLAINTIFF**

22. Tenant paid rent to Owners through Property Manager for the use of the Premises.

23. Accordingly, Tenant was an invitee on the Premises.

24. Owners had a duty to Tenant to keep the Premises reasonably safe and to warn Tenant of any hidden or lurking danger.

25. Owners had a duty to Tenant to ensure the Premises complied with the requirements of applicable building and housing codes materially affecting health and safety.

26. One of the building codes in force in Montana is the ASME CSD-1, which applies to boilers like the one present on the Premises during the time Tenant lived there.

27. The ASME CSD-1 requires that boilers like the one at the Premises have an inspection and maintenance schedule established and performed annually, or less if recommended by the manufacturer. Any defect identified must be brought to the attention of the boiler owner and corrected immediately.

28. The ASME CSD-1 requires that boilers like the one at the Premises be installed according to the manufacturer's recommendations.

29. The manufacturer's recommendations for the boiler installed at the Premises provide the following step-by-step instructions on converting the boiler to run on liquid propane:

    a. Remove the top and front access covers from the unit (no tools required for removal).

    b. Remove the three screws securing the gas valve to the venturi.

    c. Locate the propane orifice disk from the conversion kit bag. Verify that the stamping on the orifice disk matches the boiler size. Place the

orifice into the black rubber grommet in the side of the gas valve and secure in the valve.

d.   Reposition the gas valve against the venturi and replace the screws securing the valve to the venturi.

e.   After installation is complete, attach the propane conversion label (in the conversion kit bag) next to the boiler rating plate. Attach the LP caution label (in the conversion kit bag) to the left side of the unit in the lower left corner.

f.   Replace the top and front access covers

30. The manufacturer's recommendations for the boiler installed at the Premises state that after installation, the installer must measure the combustion of the boiler after it has modulated up to full fire. The CO level within in boiler flue should be less than 150 ppm for a properly installed unit. If it is not, the instructions require the installer to review the installation instructions for possible causes and corrective actions.

31. Owners had a duty to Tenant to make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition

32. Owners had a duty to Tenant to maintain in good and safe working order and condition all heating, ventilating, and other facilities and appliances supplied by the landlord.

33. Owners had a duty to Tenant to supply reasonable heat to the Premises.

34. Owners had a duty to Tenant to install in each dwelling unit under the landlord's control an approved carbon monoxide detector.

35. By acting as Owners' agent with respect to the Premises, Property Manager assumed the same duties Owners owed to Tenant.

36. If installed or maintained incorrectly, propane fired boilers pose a risk of severe personal injury, death, or severe property damage.

37. Accordingly, HVAC Contractor owed Tenant a duty to use the highest degree of care in installing and maintaining the boiler.

**DEFENDANTS' BREACHES OF THEIR VARIOUS DUTIES TO PLAINTIFF**

38. In 2014, HVAC Contractor installed a Knight Heating Boiler manufactured by Lochinvar at the Premises.

39. Propane fuel was used in the boiler.

40. HVAC Contractor failed to follow the manufacturer's installation instructions for installing the boiler to use propane fuel in at least the following ways:

   a.  HVAC Contractor failed to fit the propane orifice to ensure the correct amount of fuel was delivered to the heating chamber.

   b.  HVAC Contractor failed to measure the CO level in the exhaust of the boiler after installation to ensure a safe level of CO was present.

41. The purpose of the propane orifice is to limit the amount of propane that is delivered to the combustion chamber of the boiler.

42. Limiting the amount of propane that is delivered to the combustion chamber of the boiler is the method by which the fire within the combustion chamber is controlled such that excess heat and CO is not created.

43. Without a propane orifice, the amount of propane delivered to the combustion chamber of the boiler cannot be controlled.

44. Because HVAC Contractor installed the boiler without the propane orifice, the fire in the boiler was uncontrolled and uncontrollable, which caused dangerous levels of CO to be present in the boiler exhaust.

45. The uncontrolled and uncontrollable fire in the boiler was caused by the failure to install the propane orifice.

46. Because HVAC Contractor failed to follow the manufacturer's installation instructions, dangerous levels of CO were present in the boiler exhaust during the time Tenant lived at the Premises.

47. On December 22, 2014, the Stevensville fire department responded to the Premises, where they discovered high concentrations of CO.

48. Despite HVAC Contractor performing maintenance on the boiler after it was installed, HVAC Contractor failed to realize the boiler was pumping dangerous levels of CO at the Premises and remedy the problem.

49. Because the boiler was improperly installed and maintained and dangerous levels of CO were present on the Premises during the time Tenant lived there, the Premises did not comply with all applicable building codes.

50. Because the boiler was improperly installed and maintained and dangerous levels of CO were present on the Premises during the time Tenant lived there, Owners and Property Manager had failed to make repairs or do whatever is necessary to put and keep the Premises in a fit and habitable condition.

51. Because the boiler was improperly installed and maintained and dangerous levels of CO were present on the Premises during the time Tenant lived there,

Owners and Property Manager had failed to maintain in good and safe working order and condition all heating, ventilating, and other facilities and appliances.

52. Because the boiler was improperly installed and maintained and dangerous levels of CO were present on the Premises during the time Tenant lived there, Owners and Property Manager had failed to supply reasonable heat to the Premises.

53. Despite high concentrations of CO being present in December 2014, Owners, Property Manager, and HVAC Contractor failed to correct the problem with the boiler.

54. Despite knowing that high concentrations of CO were present at the property on at least one prior occasion, neither Owners nor Property Manager warned Tenant of the danger of CO on the property before or during the time she lived on the Premises.

55. After moving into the Premises, Tenant began experiencing symptoms consistent with CO exposure, such as: headaches, muscle twitching, weakness, and confusion

56. In August 2018, Tenant asked HVAC Contractor to inspect the heating system at the Premises in preparation for the Montana winter. HVAC Contractor inspected the boiler and declared that it was safe.

57. On October 3, 2018, Tenant called the Stevensville Fire Department because of concerns with her symptoms and the heating system. They found carbon monoxide in the Property in concentrations up to 126 ppm.

58. After responding to the Premises, the fire department shut off the propane to the Premises and advised Tenant to call a repair person.

59. Tenant informed Property Manager and HVAC Contractor about the October 3 incident. Both came to the Premises and made limited alterations to the Premises. After the alterations, they informed Tenant that the Premises was safe for her to return.

60. On November 23, 2018, Tenant called the fire department again. This time, they took more readings and discovered CO levels as high as 635 ppm near the boiler exhaust.

61. CO concentrations of 150-200ppm can kill a person or leave them with permanent brain and other organ damage.

62. Following the second discovery of dangerous levels of CO, Tenant vacated the Premises.

**CAUSATION OF INJURIES**

63. When a human breathes in CO, the CO molecules bind to his or her red blood cells and prevent them carrying oxygen around the body.

64. While living at the Premises, Tenant was breathing in CO, even when outdoors due to the boiler exhaust venting near the deck of the Premises.

65. As a result of her exposure to dangerous levels of CO at the Premises, she has suffered and will continue to suffer injuries, damages, and losses including medical expenses, lost earning capacity, impairment, physical and emotional distress, loss of enjoyment of life, pain and suffering.

66. In addition, following her exposure to CO at the Premises, Tenant took her dog to the vet and discovered Defendants' negligence had poisoned her dog as well.

**THE INHERENT DANGER OF IMPROPER BOILER INSTALLATION AND MAINTENANCE AND THE NONDELEGABLE NATURE OF OWNER AND PROPERTY MANAGER'S DUTIES**

67. The manufacturer's recommendations for the boiler installed at the Premises state that failure to comply with the installation requirements could result in severe personal injury, death, or severe property damage.

68. The manufacturer's instructions for the boiler installed at the Premises state that failure properly install the propane orifice on the boiler could result in death or serious injury.

69. The manufacturer's instructions for the boiler installed at the Premises state that failure to check and verify combustion and CO levels after installation could result in severe personal injury, death, or substantial property damage.

70. Because of the intrinsically dangerous nature of boiler installation and maintenance, Owner and Property Manager are vicariously liable for HVAC Contractor's negligent conduct.

71. Because of the intrinsically dangerous nature of boiler installation and maintenance and the duties set out by the Montana legislature in MCA § 70-24-103, Owner and Property Manager's duties to Tenant were non-delegable.

**HVAC CONTRACTOR'S DISREGARD OF THE HIGH PROBABILITY OF INJURY**

72. Due to its specialized knowledge and skill, HVAC Contractor had detailed knowledge of the danger posed by CO if a boiler is improperly installed.

73. Before installing the boiler, HVAC Contractor read the manufacturer's installation instructions for the boiler.

74. The manufacturer's installation instructions provide clear warning that there is a high probability of death or severe personal injury if the boiler was incorrectly installed.

75. Despite this knowledge, HVAC Contractor acted with indifference to the danger posed by CO exposure to occupants of the Premises by:

   a.  Failing to fit the propane orifice to the boiler.

   b.  Failing to verify CO levels in the exhaust after the boiler was installed.

   c.  Failing to identify and correct the problem after CO was discovered by the Stevensville Fire Department in December 2014.

   d.  Failing to identify and correct the problem when Tenant asked HVAC Contractor to inspect the boiler in August 2018.

   e.  Failing to identify and correct the problem when CO was again found at the Premises on October 3, 2018.

76. By failing to follow the manufacturer's instructions despite being aware of the danger and by repeatedly failing correct the boiler installation despite knowledge of the presence of dangerous levels of CO at the property, HVAC

Contractor deliberately acted with indifference to the high probability of injury to Tenant.

77. Owners and Property Manager knew CO was present in dangerous levels at the Property in December 2014 after HVAC Contractor installed the boiler.

78. Owners and Property Manager continued to select HVAC Contractor to maintain the boiler despite knowing that it had installed the boiler in a way that resulted in dangerous CO levels at the Premises.

79. Owners and Property Manager recommended HVAC Contractor to Tenant as a suitable person to inspect the boiler despite knowing that it had installed the boiler in a way that resulted in dangerous CO levels at the Premises.

80. Accordingly, Owners and Property Manager were reckless in selecting and retaining HVAC Contractor to maintain the boiler after discovering dangerous CO levels in December 2014 and in October 2018.

**FIRST CLAIM FOR RELIEF**
**(Negligence Per Se/Violation of § 70-24-303, MCA against Owners)**

81. Owners are landlords with respect to the Premises within the meaning of § 70-24-103(7) because they held legal title to the Premises at the time Tenant resided there.

82. Owners violated a particular § 70-24-303 MCA by:

   a.  Failing to make repairs or do whatever was necessary to put and keep the Premises in a fit and habitable condition.

   b.  Failing to maintain in good and safe working order and condition all heating, ventilating, and other facilities and appliances.

   c.  Failing to supply reasonable heat to the Premises.

83. § 70-24-303 MCA was enacted to protect residential tenants from dangerous rental premises.

84. Tenant was a resident of the Premises pursuant to a residential lease, so she was within the class of people § 70-24-303 MCA was designed to protect.

85. Tenant's injuries were within the class of injuries the statute was enacted to protect against because they were directly caused by the dangerous condition of the Premises that we cause d by Owner's failure to abide by its statutory duties under § 70-24-303 MCA.

86. As a direct and proximate result of Owners' violations of § 70-24-303, MCA, Tenant sustained permanent injuries, to include brain injuries, resulting in disability, pain and suffering, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, both in the past and to continue permanently into the remainder of her future. Plaintiffs have also incurred expenses for medical care and treatment and will continue to incur

such expenses in the future; and have suffered a loss of ability to earn money in the future.

## SECOND CLAIM FOR RELIEF
### (Negligence against Owners)

87. Owners owed a duty to keep the Premises reasonably safe and to warn Tenant of any hidden or lurking danger.

88. Owners had notice of all information Property Manager was in possession of through Property Manager acting as Owners' agent in the maintenance and management of the Premises.

89. Owners breached their duty of reasonable care by:

   a. Failing to ensure the boiler at the Premises was installed correctly according the applicable building codes and the manufacturer's instructions.

   b. Failing to ensure the boiler at the Premises was repaired after CO was detected at the Premises in 2014 so that it was in compliance with the applicable building codes and the manufacturer's instructions.

   c. Failing to keep the Premises in a reasonably safe condition.

    d.  Failing to make repairs or do whatever was necessary to put and keep the Premises in a fit and habitable condition.

    e.  Failing to maintain in good and safe working order and condition all heating, ventilating, and other facilities and appliances.

    f.  Failing to supply reasonable heat to the Premises.

    g.  Failing to warn Tenant that CO had been detected at the Premises in 2014.

**90.** As a direct and proximate result of Owners' negligence, Tenant sustained permanent injuries, to include brain injuries, resulting in disability, pain and suffering, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, both in the past and to continue permanently into the remainder of her future. Plaintiffs have also incurred expenses for medical care and treatment and will continue to incur such expenses in the future; and have suffered a loss of ability to earn money in the future.

**THIRD CLAIM FOR RELIEF**
**(Negligence against Property Manager and Vicarious Liability against Owners)**

91. Property Manager owed a duty to use reasonable care under the circumstances in managing and maintaining the Premises.

92. Property Manager breached its duty of reasonable care by:

a.  Failing to ensure the boiler at the Premises was installed correctly according the applicable building codes and the manufacturer's instructions.

b.  Failing to ensure the boiler at the Premises was repaired after CO was detected at the Premises in 2014 so that it was in compliance with the applicable building codes and the manufacturer's instructions.

c.  Failing to keep the Premises in a reasonably safe condition.

d.  Failing to make repairs or do whatever was necessary to put and keep the Premises in a fit and habitable condition.

e.  Failing to maintain in good and safe working order and condition all heating, ventilating, and other facilities and appliances.

f.  Failing to supply reasonable heat to the Premises.

g.  Failing to warn Tenant that CO had been detected at the Premises in 2014.

h.  Recommending HVAC Contractor to Tenant to inspect and repair the boiler at the Premises despite knowing that CO had been present at the Premises after HVAC Contract installed the boiler.

93. As a direct and proximate result of Property Manager's negligence, Tenant sustained permanent injuries, to include brain injuries, resulting in disability, pain and suffering, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, both in the past and to continue permanently into the remainder of her future. Plaintiffs have also incurred expenses for medical care and treatment and will continue to incur such expenses in the future; and have suffered a loss of ability to earn money in the future.

94. Owners are vicariously liable for Property Manager's negligence because, as described by the manufacturer's installation instructions, improperly installed and maintained boilers can lead to serious injury or death and is an intrinsically dangerous activity, which makes Owners' duties under § 70-24-303, MCA and Montana tort law non-delegable.

## FOURTH CLAIM FOR RELIEF
### (Negligence against HVAC Contractor and Vicarious Liability against Property Manager and Owners)

95. Improperly installed or maintained boilers present a high risk of severe injury of death to occupants of a residential premises.

96. Accordingly, HVAC Contractor owed a duty to use the highest degree of care in installing and maintaining the boiler at the Premises.

97. In the alternative, HVAC Contractor owed a duty to use reasonable care under the circumstances in installing and maintaining the boiler at the Premises.

98. HVAC Contractor failed to use either the highest degree of care or reasonable care in installing and maintaining the boiler by:

    a. Failing to fit the propane orifice to ensure the correct amount of fuel was delivered to the heating chamber.

    b. Failing to measure the CO level in the exhaust of the boiler after installation to ensure a safe level of CO was present.

    c. Failing to identify and fix the incorrect installation after CO was detected at the Premises in 2014.

    d. Failing to identify and fix the incorrect installation after CO was detected at the Premises in October 2018.

    e. Failing to warn Tenant in October 2018 that CO had been found at the Premises multiple times and that the boiler was incorrectly installed.

    f. Failing to install the boiler in accordance with the manufacturer's instructions and applicable building codes.

    g. Failing to maintain and repair the boiler so that it was in compliance with the manufacturer's instructions and applicable building codes.

99. As a direct and proximate result of HVAC Contractor's negligence, Tenant sustained permanent injuries, to include brain injuries, resulting in disability, pain and suffering, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, both in the past and to continue permanently into the remainder of her future. Plaintiffs have also incurred expenses for medical care and treatment and will continue to incur such expenses in the future; and have suffered a loss of ability to earn money in the future.

100. Owners and Property Manager are vicariously liable for HVAC Contractor's negligence because:

   a. They recklessly continued to hire HVAC Contractor to maintain the boiler at the Premises and recommended him to Tenant as a suitable person to service the boiler despite their knowledge that HVAC Contractor had installed a boiler in a way that had allowed CO to be present in the Premises on at least two prior occasions.

   b. As described by the manufacturer's installation instructions, improperly installed and maintained boilers can lead to serious injury or death and is an intrinsically dangerous activity, which makes

Owners and Property Managers' duties under § 70-24-303, MCA and

Montana tort law non-delegable.

101.   HVAC Contractor's conduct was deliberately indifferent to the high

probability of injury to Tenant because:

a.   Due to its specialized knowledge and skill, HVAC Contractor had

detailed knowledge of the danger posed by CO if a boiler is

improperly installed.

b.   Before installing the boiler, HVAC Contractor read the

manufacturer's installation instructions for the boiler.

c.   The manufacturer's installation instructions provide clear warning that

there is a high probability of death or severe personal injury if the

boiler was incorrectly installed.

d.   Despite his knowledge of the danger, HVAC Contractor failed to fit

the propane orifice to the boiler.

e.   Despite his knowledge of the danger, HVAC Contractor failed to

verify CO levels in the exhaust after the boiler was installed.

    f.  Despite his knowledge of the danger, HVAC Contractor failed to identify and correct the problem after CO was discovered by the Stevensville Fire Department in December 2014.

    g.  Despite his knowledge of the danger, HVAC Contractor failed to identify and correct the problem when Tenant asked HVAC Contractor to inspect the boiler in August 2018.

    h.  Despite his knowledge of the danger, HVAC Contractor failed to identify and correct the problem when CO was again found at the Premises on October 3, 2018.

## PRAYER FOR RELIEF

Tenant asks the Court to enter judgment in her favor for damages including the following:

1. Compensatory damages, directly or vicariously, against all Defendants;

2. Punitive damages, directly or vicariously, against all Defendants for their deliberate indifference to the high probability of injury to Tenant;

3. Attorneys' fees under § 70-24-303 MCA;

4. The costs of bringing this action as provided by law;

5. Interest as provided by law; and

6. Any other relief authorized by law or equity and required by justice.

## JURY DEMAND

Tenant demands a trial to a jury on all issues so triable.


DATED: April 2, 2021, by:

**THE LAW OFFICE OF SAM CANNON**


*/s/ Sam Cannon*
Sam Cannon
Attorney for Plaintiff